Next matter is Hinkle v. Assurant Inc. Mr. Slota, whenever you're ready, sir. Good morning. My name is Robert Slota. I represent Thomas Hinkle, the administrator of the estate of Mary Ann Hinkle. I would like to reserve three minutes for rebuttal. Your Honors, I want to say at the outset, we are not saying that a deferential standard of review does not apply in this case to your examination of a union securities claim decision. We understand the holding of the Supreme Court in Firestone and Glenn about the deferential standard. So you're backing off the argument in your brief, then, at least in terms of Firestone and Glenn? I think the argument in the brief was not well articulated, and let me see if I can do a better job of it here. What we are saying is that this is a case where the claim decisionmaker's conflict of interest should be given great weight in the analysis that you undertake of whether union securities actions were arbitrary, were they arbitrary and capricious. It should be given, in fact, that conflict of interest should be given the highest possible weight, and what we are saying is that the district court gave insufficient weight. What evidence here is there that the conflict of interest played a role in the denial of benefits? Okay. Other than the actual denial. And what is also, what is in the record as to what the facts regarding the conflict of interest? Yes. The conflict of interest is, in this case, is more than a conflict. It is a financial self-interest that union security has in the outcome of their claims decision. In these cases, that is always the nature of the conflict. Only when the claims decisionmaker is an insurance company that is separate. The whole idea of giving discretion to the plan administrator arose in the context of pension plans where there was a segregated fund of money that the employer could never get back. So, no matter how the decisionmaker decided on whether to pay money out or retain it in the plan, it wasn't going to in order to benefit the decisionmaker. All right? So, it is only in those cases now where we are in a context like this where we are talking about an independent insurance company that has been retained or brought in to administer and pay the funds in the plan that you have a conflict like this. And here we know what the conflict was. It was approximately a $100,000 financial self-interest that would go right to the bottom line of union security if this claim was denied. What are some other reasons that we know that this conflict of interest played a part? First, the initial reason that was given by union security for denying this claim was never backed up by any medical support either in the medical record or by any medical analysis or examination that union security undertook on their own behalf. They simply said… Help me understand that. I didn't think at any point in time that initial decision, first appeal or second appeal, there was ever any doubt or indecision about what caused this tragic death. It was pretty clear from the very beginning, wasn't it? Well, I think that's clear. However, what is significant is that at the time of the initial denial and then the first review, the reason given, and it's specifically stated, and I think it's critical for the court to examine the appendix at page 169, 172, and 177. Those are the three different letters that the insured received as to why the claim is being turned down. I have them in front of me. Okay. And I'm… No. But in the first two letters, the company said very clearly, we're denying your claim because the death resulted from a physical disease, kidney disease. Indirectly. Yeah. Directly or indirectly. Directly or indirectly. Our position is that doesn't matter because there's nothing in the medical record to indicate that Marianne Hinkle ever had a kidney disease. But isn't the point of that exclusion to say, you know, accidental death and dismemberment doesn't include if you have a medical issue that your disease or whatever, I mean, and she did, she had an operation for a cyst or tumor, whatever it was. It would have been very easy for Union Security to draft their policy to say it doesn't apply if you have a medical condition. It doesn't apply if you have an operation. It didn't say that. It said it doesn't apply if you die as a result of a physical disease. What does disease mean? Well, disease means some abnormal physical condition that impairs a bodily function. Well, kidney, you know, are we going to draw a distinction between the kidney or the heart or the brain? Marianne Hinkle had no kidney disease. All she had was a benign simple cyst on her kidney. Well, it turned out to be benign. If it was cancerous, did she have a disease? But the policy language excludes only if she has a physical disease. She did not. The problem is, again, the standard of review. We have to find that this is so egregious, it has to be arbitrary and capricious. And this is maybe improper, but I did a little impersonal survey. Every layperson I have asked, and a number of them, whether or not a cyst on a kidney is a disease, has said yes. Every doctor I've asked has said no. But the test here is not that of Dorland's medical dictionary. But I'm so glad, Your Honor, that you said that. Because it seems to me that you- It doesn't help you. Well, if I may, it seems to me that Union Security, in a position of a fiduciary here, has the duty to at least ask a doctor, ask a medical person, is a simple benign cyst on a kidney a physical disease? Let's say cyst on a kidney. Cyst on a kidney. Is it a physical disease? For which operation, an operation is required. Is it a physical disease? They never asked a doctor. In fact, they had a doctor, Dr. Parmet, engage- Reasonable minds. The problem is reasonable minds could differ. I think that's the situation that Judge McKee is encountering. And when reasonable minds can differ, I mean, Judge Fulham was rather shorthand in his reasoning, but he said, you know, there are cases on both sides here. Well, that's when we get to the second cause. But, you know, there are cases on both sides here, so it couldn't be an abuse. How is it such an abuse of discretion when reasonable minds can differ? When we're looking at the ordinary plain usage of the term, it's not- we're not looking at this to the eyes of necessarily maybe you disagree. The definition here is the common ordinary understanding. It's not the technical understanding that a nephrologist might- who's a friend. But it's not the nephrologist's definition. It's the common ordinary layperson's definition. Maybe you disagree with that. Well, I think that as a fiduciary here, Union Security has the obligation to do something more than just look at this and have some claims person or clerical person say, well, what do I think? Do I think this is a physical disease? Get some information from a qualified person to tell you whether that- and they didn't do that. They had Dr. Parmet. He addressed a number of other medical issues. The test for an insurance policy is the reasonable expectation of the insured. In this case, the beneficiary. The reasonable expectation of an insured is going to be that of a lay understanding of what disease means. Again, it's not going to be what a nephrologist with several grants from the NIS- or NIS- and I'm sorry, NIH thinks it is. So doesn't that undermine what you're saying about their obligation to go get specific expertise to help them understand the meaning of the word disease? No, I don't think so. I disagree that- and this is a benign simple cyst. That's what it's called in the record. But I disagree that the lay understanding- But you keep saying benign. It turned out to be benign. Yeah. But for all we know, it was a cyst for which an operation was- A simple cyst on a kidney. It's a simple cyst. That's what it's called as opposed to complex. You insist on putting simple in there. The lay understanding, it seems to me, is not necessarily that it is a physical disease. But as to the common and lay understanding, certainly I think the common and lay understanding as to whether a surgeon who misidentifies and cuts the wrong artery and the patient ends up dying from that, whether that's a mistake or whether that's an accident, that's the common and lay understanding. I think that's where that comes into this case. But if I may- If it was de novo, it seemed to me you'd have a slam dunk here. And again, it seems to me the problem here is not necessarily the determination that was made. In terms of the really regrettable and tragic impact on the beneficiary, yes, that's the problem. But the real problem from a legal point of view is not the determination that was made but the standard of review that we have to bring to bear on that determination. I don't disagree with anything you said in terms of they could have and maybe even should have gone further in defining and honing down and sharpening what disease was. But is it so unreasonable not to have done that on the face of this policy as to give rise to an arbitrary and capricious result? Let me see if I can make an argument and help you there. You have to make the determination. I would urge you to think of a balance scale. On one side, you have the important, and we would say the factor that deserves great importance, which is their conflict of interest. $100,000 financial interest, the fact that they did not get any medical support for the determination that this was a physical disease, and the fact that they gave inconsistent and sort of two-stepping or shifting reasons for their denial by the time they got to different levels of review. That's on one side of the scale. Or you could say additional reasons. Okay. I think that they backed off, it seems to me, if they were confident of their first reason that it was reasonable, they wouldn't have backed off it. But that's what they did. I'm looking at the chart here, I'm not sure how much they did back off of it. On the other side of the scale, what they say is that, well, because Sankir was out there in the judicial landscape, this was reasonable. And you have to weigh whether that's enough. Our submission is it was not enough. There's no evidence that anyone from Union Security ever looked at Sankir. Sankir, in fact, is distinguishable because the policy provisions specifically excluded death as a result of medical treatment, which is not a provision that was in this policy, and which Union Security certainly could have written into this policy if they didn't want to pay for those kinds of losses. But that wasn't the holding of the court. Right. I looked at that argument in the other side's brief, and I went back to Sankir. Sankir never says in that opinion, and they certainly don't say at page 1051, we're excited, I looked over that very carefully, that we're not relying on the policy, on that fact that there is that exclusionary language in there. Sankir says, in fact, that the plan documents and the summary plan description are consistent, and they give a small quotation in the opinion of what the accidental death coverage is, but it's not clear from that opinion at all in that record what the coverage was. But they don't say in the opinion we're not relying on. I know, but I have the opinion in front of me now, and I've read it before, and I'd have to give it to Judge Capelton. It didn't seem that they could easily have focused on that exclusion. And in reading through it, I didn't get the feeling they were focusing on that at all. Yeah, they say, although such injuries are accidental in the sense of unintended and infrequent, they are not accidents, as the term is used in insurance policies for accidental injuries. Again, this is an accidental death and dismemberment policy. Our position would be, first of all, that there has to be some evidence that the company relied on Sankir, and that's why on the motion for summary judgment, that evidence was never able to be developed. So we don't know whether their actions were reasonable on that basis. Certainly, they never cite to it. I'm over my time, so. I'm not sure that's accurate, because whether or not they resort to Westlaw or Lexis, what is in Westlaw or Lexis, it seems to me, would go to the reasonableness of their decision. I'm not sure. You're saying that the company has the obligation to explore medical and legal support for their decision making. And I, maybe I'm rebuttal, you can provide some authority for that. The other thing, and I know your time is up, but if you're right in your argument,  because you seem to be arguing that where there is a conflict of interest, even if the record doesn't show how the conflict of interest influenced the decision. The very fact of the conflict of interest means that, and then you use the heightened scale that you just demonstrated for us. Doesn't that put our pre-Firestone Law right back on the table, if you're right about that? Because there's no way of knowing how or if the conflict of interest impacted the decision, but you're suggesting the mere fact of the conflict of interest requires a heightened scale. And it seems to me that then, Glenn, we're back to paper if that's the case. Well, I think it's going to be, I think cases have to be decided on a case specific basis. I think it's a reason why there ought to be claimants here ought to have the right to do discovery and find out what the basis for the company's decision was. And it's not appropriate to do it at this stage of the case. Maybe discovery's going to bear out that there wasn't a conflict of interest. Are you saying you could not have explored that? I'm saying we never had the opportunity to explore that, because summary judgment was granted. But could you not have looked into that and said to the court, you know, in order to make, you know, survive summary judgment, I have to be able to say that, you know, how you should weigh this and you need discovery. Did you seek discovery? We didn't, no, we didn't have the opportunity to seek discovery before the motions were filed and this case was argued. I hope, I believe I argued that to the court. Pardon me? Because summary judgment usually only occurs after discovery. No. Rule 56E allows you to say, wait a minute, court, before I'm forced to defend this summary judgment motion, I need to have discovery. Okay, let's hear from your friend across the way. Thank you. May it please the court. Good morning, Joshua Backrack. I represent the appellees in this case. I'll refer to them collectively as Union Security. I think, Chief Judge, you're correct. He's trying to move us back beyond Glenn and even beyond Firestone on the conflict of interest arguments. Glenn involved an insurance company. And the Supreme Court specifically held that a conflict of interest, or as, you know, some people call it the, you know, their position, just being in their position of insurer and decision maker, does not alter the standard of review. So that being it alone does not alter the standard of review. In fact, they said that there's nothing that really standards it, it's just, or alters it, it's just something you have to look at. It's a factor to look at. Counsel argues that my client should have investigated more, and that's a conflict. But that's contrary to this circuit's law. In Pinto versus Reliance Standard, there's a footnote at the end of it. I think it's footnote three, which states that an insurer has no obligation to go out and investigate. So that's an incorrect argument. And then counsel says that my client raised a new basis for the decision on the third decision letter. And that's also wrong. Because counsel asks you to look at page 169, which said directly or indirectly. But if you look at page 168 of the record, which is the first page of the decision before that, it specifically says that the cause of death was due to medical error. The second decision letter, again, says that the cause of death was due to medical error and as a result of disease. So, and it specifically said, in the event, we believe that in the event a court does not even agree with that, a court would still fine. So clearly, there were two bases for this denial that were raised at all times. With respect to the issue of whether this is a disease, I think your honors have pointed it out. It's not what a doctor would say. It's what a layperson, that's the standard, what a layperson considers to be a disease. Now, a doctor may be relying on some sort of technical definition that clearly does not go into the mind of a layperson. A layperson, if you look up Webster's and even if you look up Tabor's medical dictionary, they define a disease as an abnormal state or condition. We know that a cyst can produce bleeding. We know that it can produce back pain. And by the way, contrary to the argument that this cyst didn't produce any symptoms, we know she went to the doctor because she was having back pain. She had an MRI performed and that showed something. And that led to the ultrasound and the CT scan which revealed this cyst. Obviously, if this wasn't producing any symptoms, why would these tests have been performed? A doctor wouldn't just say, let's see if there's a cyst here or a tumor. There was obviously something wrong that required this testing. And that's why, unfortunately, the surgery took place. But you can't separate this cyst out from being a disease. Clearly, it is. And since it is a disease, it falls right into this court's holding in Schiffler that when you have a policy that says that a loss directly or indirectly from disease is excluded, there can be no recovery under an accidental loss policy like this one. And more recently, Schiffler was relied on in Ray versus Federal Insurance Company. It's a per curiam decision. Judge Rendell, you were on the panel in that one. It's 256 Federal Appendix 566. Is that a non-precedential? It is non-precedential, Your Honor. And what the court said there... The reason why she asked that question. Oh, that's why I said it was per curiam. It says, the court said there that these type of exclusions mean that a court must construe coverage quite narrowly. And that if a disease has anything to do with the loss, then it's not covered. And clearly, either directly or indirectly, this disease clearly had to do with the loss. If it was but for the fact that she had the cyst, there wouldn't have been the surgery. And it's that simple, unfortunately. With respect to the other basis for the denial, which relies on the fact that there was a medical mishap, perhaps, but a medical mishap cannot equate to an accident, there is a plethora of decisions on that subject. ERISA and non-ERISA cases. I disagree with counsel's statement that St. Kierre relied on the exclusion. It did not rely on the exclusion. It flat out said... It couldn't have made its holding any clearer that a medical mishap, medical negligence is not an accident. It did not rely in any way on that exclusion. And I think it's important that we see that there are non-ERISA cases that also said that. Why is that important? Because they didn't have to give deference to the defendants in those cases. They could have applied the doctrine of contraprofarentum, but they didn't because they agreed that the only interpretation of an accident is that it does not include medical mishap. Now, you look at the... Although St. Kierre's been criticized. There's a Smith court decided the term accident was ambiguous and construed it against the insurance company. Similarly, Borelli in the Seventh Circuit of District Court concluded that St. Kierre applies only when the policy does exclude losses resulting from medical treatment. Why should we not construe this against you if... Because you drafted the policy. Well, I think there are a few reasons. One is Borelli is flat out wrong in its analysis. And Borelli, they thought that the court relied on the exclusion when it clearly did not. Borelli obviously as a district court would not have overturned a Seventh Circuit presidential decision. It was also based, by the way, Borelli was based on Illinois state law. And Illinois state law differs because they take an opposite view of this circuit's position in Schiffler. So we obviously have to apply Third Circuit law and not Illinois state law. The other thing is... What is an accident? I mean, really this happened because a surgeon slipped and, you know, accidentally caused the death. Is an accident limited to a car crash or someone banging, you know, a collision? I mean, this clearly was an accident.  As Judge Posner said, it's an accident in the sense of the term accident. However, is it an accident for coverage under an accidental death policy? No, it's not. Well, that's almost like Judge Posner testifying as to what he thinks accidental death and dismemberment policy means and what someone should anticipate. But, you know, accidental bodily injury, on the one hand, I can't think of anything clearer than this. This is something that shouldn't have happened, that was a mistake, that was the result of, you know, negligence. And, you know, car crashes are the result of negligence. You know, where do you draw the line and say, oh, clearly this isn't an accident? Well, it was an intentional... In other words, the doctor intended to cut that artery. I understand he definitely messed up. Well, he meant to cut that. He just, it wasn't the one he intended. The wrong artery. Yeah, but I mean, it's an accident. If you intend to step on the brake and you step on the gas pedal instead, I mean, the accident that results is the result of an intentional action. You deliberately put your foot on that pedal and press down. But you got the wrong pedal. Here you got the wrong artery. What's the difference? Well, the difference, there are a few differences. The first one is that, as the court stated in Pysankyar, you have proof issues. And in a medical negligence, which you're definitely, you're taking this... Why did you exclude medical negligence then? Well, then you could go through a whole list of everything and exclude it. The common understanding is, I think, you look at these state law cases, and also Austin and Carson, which were decided based on state law diversity, non-ERISA cases, they also said this is not an accident. So, I think the common understanding of an accident is that if you go in for a medical procedure and something happens, it's not an accident. Why not? Because, well, here's the problem. You're now converting this into a medical malpractice policy. And there are different proofs. Maybe this person's anatomy was such... Well, Mr. Slotus, his policy is going to be, if you don't want accident to be interpreted in a way, that will convert your policy into a medical malpractice policy and put an exclusion saying accident does not uncover death or injury resulting from medical malpractice. Medical mistakes, errors, negligence of any kind? But then where do you stop? And then when the next situation arises, and you have to say, well, you mentioned this one, but you didn't mention this one. Okay, so now we have to amend our policy again to include that, but the problem is insurance departments don't like us doing that very often. But I think you probably have to do it all the time. Well, no, they actually, they don't let us do it all the time. That's the problem is insurance departments not only don't like it, they will sit on the policy applications for the form changes for years on end. And then when they do it, they say, okay, now we're going to look at all of your language. And we may disagree with some that was okay before, but now it's not good. Okay. Let me, help me a little bit with Glenn. You, I think, acknowledge that the court in Glenn said that when there was a conflict like, in fact, existed in this case, it's something that has to be taken into account and evaluated and weighed in the process of deciding whether there was an abuse of discretion. How, how do you do that? And how do we know what Judge Fulham did, in this case, what weight he gave him since he never acknowledged, expressly at least, that there was a conflict and certainly didn't explain what weight he did or did not give it. Slight weight or he gave it slight weight or he gave it medium-sized weight. But how do you apply this and how do we know what Judge Fulham did? Well, I think there are a few answers to that. And I agree that his opinion was very brief and, and didn't have as much of an explanation as one might like. But the Supreme Court in Glenn stated that it's a factor. And in some points, the conflict may, there may be such lack of evidence of a conflict that it goes to the vanishing point as far as the importance of the conflict. That's the word. Those are the words in Glenn. It could reach the vanishing point. Now, in this case, all we have is the structural conflict-insured decision-maker. I disagree with his arguments that there's more to the conflict here. I think the other important thing is when you're looking at an interpretation, an interpretation's either reasonable or unreasonable. And at times, the conflict doesn't matter as much, except if you've inconsistently interpreted the plan or the language. If you've inconsistently interpreted it, that's a huge conflict. And that would weigh substantially. In fact, that would probably turn it the other way. There's no evidence in this case. But what the judge did here as far as the conflict goes, Judge Fulham said, I can't find that this is an unreasonable interpretation. We have courts that have said that this is a reasonable interpretation of accident. But had he said along with that, that there is a conflict here, and I don't find that conflict impacted this decision at all. I mean, we just don't know. It seems to me maybe the best way to get at that is a remand. Maybe he'll factor it in and come out the same way. Maybe he'll say, look, dummies up there in the Third Circuit. I mean, he did this. Don't send it back here. Same result. Maybe he'll say, well, you know, he was clearly troubled by his decision. Maybe he will say that, well, you know, when I factor in the financial impact and the conflict of interest, it does seem to me that it approaches that standard of arbitrary and capricious to say this was not an accident, which is clearly an unintentional death. Well, Your Honor, I disagree for a few reasons. One is he had the opportunity to make every argument counsel wanted to on the conflict of interest and didn't. He didn't make any in the district court. He's waived this. The other thing is, you know, if I'm not mistaken, counsel- I'm sorry. You're saying conflict of interest was not raised at all in the district court? He raised his argument saying de novo review. He presented no evidence on a conflict of interest. If he thought the conflict should have been waived, he should have made accurate arguments regarding the standard of review, not saying de novo review. Counsel had the opportunity to conduct discovery. He didn't. And I may be wrong, but I'm fairly certain counsel moved for summary judgment before me. So he's the one who thought there are no issues of fact. And as Judge Stableden pointed out, if he thought there were issues of fact, such as conflict of interest, under 56E, he should have filed, in response to my motion, a request to conduct discovery. He didn't. The issues were out there. The law was out there. He ignored them. He's waived it at this point. And the reason the judge didn't necessarily address these arguments was they were never presented to him. But the judge clearly reviewed it for abuse of discretion. The sliding scale no longer applies. No, but you have to take conflict in as a factor. And we don't know where he factored it in, if at all. And if he thought that reasonable minds could differ, it could be that if these are in equipose and he waived the conflict, then he might have come out the other way. I disagree, Your Honor. I'll tell you why. When you look at the decisions in Lasser v. Reliance Standard and Scredvet v. DuPont, what this Court has consistently said is that as long as the plan comes up with a reasonable interpretation, it must be upheld. Concrete v. Frommert, the Supreme Court on April 21 said, as long as the plan comes up with a reasonable interpretation, it must be upheld under the deferential standard. Even where there's a conflict of interest. Even if there's a conflict. Of course. And that was the big point in Frommert, in Concrete v. Frommert. The Court said, you can't just ignore it. You know, there's a conflict here, but that doesn't mean you ignore the deference. The deference is important. And I'll tell you why it's important for this specific case, if I may continue beyond my three seconds that are left here. What the Court said in Frommert, in Concrete v. Frommert is, if you take away this deference, if you don't look at the fact that they've offered a reasonable interpretation, then what you're left with are courts substituting their own judgment, which is going to lead to inconsistent decisions in different circuits. We know that in the Fifth Circuit under Thomas, in the Seventh Circuit under Glenn, I'm sorry, under Sankier, and under numerous district courts, under this same set of facts, my client has to win. For this Court to then follow a different interpretation would lead to inconsistent interpretations, contrary to what the Supreme Court said in Concrete, contrary to the goals of ERISA. But in conclusion, the more — But it would be consistent within our circuit, which is all we can do. But what the Court looked — but the Court was very concerned in Concrete was having consistencies throughout the land. The whole purpose in ERISA is to have consistency in interpretation and plan administration. But the one thing, if I may, Your Honors, is we don't need to even look at that issue because this case falls so squarely under Schiffler that Third Circuit law is clear and the claim is barred by the exclusion of this policy. But I still believe that because Union Security's decision here is a reasonable interpretation under Third Circuit law, it has to be accepted. And therefore, the judgment should be affirmed. Thank you, Mr. Beckwith. Thank you. It seems to me, Your Honors, that we can't lose sight of the fact that cases are about real people. And I was thinking about — Marianne Hinkle was a longtime school secretary. I was thinking about a longtime secretary at my son's elementary school. If I told her that a friend had died because a surgeon had cut a wrong artery by mistake, she would say, well, of course that was an accident. Marianne Hinkle would have thought the same thing. Certainly, Judge Fulham, in his opinion, said that he thought the same thing. And I was thinking that Union Security's brief is 39 pages of arguing why Union Security was justified in calling what was obviously an accident, not an accident. And I think that when lawyers and judges go through this kind of convoluted reasoning to justify a result that a layperson would say just doesn't make a lot of sense, that that's the sort of thing that makes ordinary Americans lose confidence in the courts and in the legal system. And why I'm the butt of more — Well, you know, I'm not sure how much that argument helps us. I'm not disagreeing with anything you said. Yeah. I'm not sure it helps us except for what you last said, and that is to the extent that that would be unreasonable, then you do get to arbitrary and capricious. That's what it means. Okay. And I would just submit in closing that — In the same fact, you know that the reasonable expectation has been ensured that she would have been dumbfounded to find out that a mistake of this kind was not an accident. And we can go back to the example I gave of intentionally hitting the pedal below you, but it's the gas pedal and not the brake. Mm-hmm. Yes. And an accident results. Clearly, that's an accident. Yeah. Clearly, it is. And the insurance companies in these situations have the ability to write the policies to exclude this sort of things. There was talk about uniformity. There's never going to be complete uniformity unless every insurance company that's — has the same language. Policies are always going to be different with different language, and there are going to be differences in interpretation. I understand uniformity is a laudable goal, but in the cases of real people, decisions have to be made. So I — I guess you could say there's ambiguity here, and to that extent, we should construe it against the insurance company. There is ambiguity with respect to what an accident is. What's a disease, what's an accident. And what's a physical disease. My theory is ambiguous. Yeah. All right. And I think that your honors have an opportunity in this case not to let that sort of happen — that sort of thing happen. That lawyers and judges do all this sort of lawyer talk about things, and the public knows what an accident is. Thank you. Could we just see Houser for a second at the bench?